Dale E. Amspacher, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

448

Submitted on briefs June 4, 1984, to Judges WIL-
LIAMS, JR., DOYLE and PALLADINO, sitting as a panel of
three.

*P. Nelson Alexander,* for petitioner.

*Charles G. Hasson,* Acting Deputy Chief Counsel,
with him, *Richard L. Cole, Jr.,* Chief Counsel for re-
spondent.

OPINION BY JUDGE WILLIAMS, JR., August 14, 1984:

This is an appeal by Dale E. Amspacher (claimant) from an order of the Unemployment Compensation Board of Review (Board) affirming a referee's denial of benefits under Section 401(c) of the Unemployment Compensation Law (Law)[1] and finding claimant had a fault overpayment of $4,530 which is subject to recoupment under Section 804(a) of the Law.[2]

Claimant was employed on a full-time basis by the Pittman Division of A. B. Chance Company (Pittman) as a hydraulic mechanic for approximately three years. Claimant was laid off at Pittman due to lack of work and his last working day at Pittman was February 27, 1981. From December 1980 claimant was also employed on a part-time basis by Paval Associates, Inc. (Paval) as a security guard.[3] Claimant's last day of work with Paval was February 28, 1981 when claimant voluntarily left his employment with Paval.[4]

Claimant applied for unemployment compensation benefits listing Pittman as his last employer and that he was laid off due to lack of work. Claimant did not mention his voluntary termination at Paval to the Office of Employment Security (OES) when filing his claim in March 1981. On the basis of the information provided by claimant, the OES granted claimant

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §801(c).

[2] 43 P.S. §874(a).

[3] Claimant's working hours with Paval were initially sixteen hours per week but were increased to the point where claimant was at times working up to forty-eight hours per week for Paval.

[4] Claimant's written resignation from Paval dated February 28, 1981 gave as the reason for leaving—"laid off at full time employer's, working here would mess up my unemployment." At the September 3, 1982 referee's hearing claimant acknowledged the authenticity of the resignation notice.

benefits[5] for the compensable week ending March 7, 1981 through the compensable week ending September 26, 1981, a total of thirty weeks.

Claimant was recalled to work at Pittman in September 1981 and laid off for two weeks in May and June of 1982. Claimant filed for benefits in June 1982 indicating to the OES that he had eight credit weeks with Paval.[6] It was at this time the OES first learned that claimant had quit his job at Paval on February 28, 1981. The OES issued a determination that claimant was ineligible for benefits for the compensable weeks ending March 7, 1981 through September 26, 1981 under Sections 401(c) and 402(b)[7] of the Law. The OES also determined claimant had received a fault overpayment of $4,530 subject to recoupment under Section 804(a) of the Law. Claimant appealed and, after a hearing, the referee upheld the OES determination. Claimant appealed the referee's decision to the Board which modified the referee's decision to eliminate consideration of the Section 402(b) voluntary quit issue[8] and affirmed the referee's decision in all other respects. Claimant then petitioned this Court for review.

The three issues presented on appeal are (1) whether the Board erred in finding claimant ineligible

[5] Claimant received a weekly benefit of $151 of which $143 was claimant's basic benefit and $8 was a dependents' allowance. Claimant's partial benefit credit was $58.

[6] Claimant's eligibility for benefits for this period is not at issue here.

[7] 43 P.S. §802(b).

[8] Claimant has raised and briefed the issue of whether the referee erred in ruling claimant ineligible for benefits under Section 402(b) of the Law due to claimant's voluntary termination at Paval. The Board, however, did not rule on the referee's Section 402(b) determination and based its ruling solely upon Section 401(c). Accordingly, the issue of whether claimant was justified in leaving his job at Paval is not before us on this appeal.

for benefits for the weeks ending March 7, 1981 through September 26, 1981 under Section 401(c) of the Law; (2) whether the Board erred in denying claimant a remand to take additional evidence as to which employer, Pittman or Paval, was claimant's "last employer," and (3) whether the Board made a sufficiently specific finding of fault on the part of claimant so as to subject claimant to a Section 804(a) fault overpayment recoupment. Under our limited scope of review, we must affirm the action of the Board unless there is a violation of constitutional rights, an error of law committed by the Board, or a necessary finding of fact is not supported by substantial evidence contained in the record. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; *Saxton v. Unemployment Compensation Board of Review,* 71 Pa. Commonwealth Ct. 636, 455 A.2d 765 (1983). We are also mindful that the Unemployment Compensation Law is remedial legislation whose benefit provisions are to be construed liberally in the claimant's favor. *Micciche v. Unemployment Compensation Board of Review,* 75 Pa. Commonwealth Ct. 293, 461 A.2d 914 (1983).

We will deal first with the issue of whether the Board erred in finding claimant ineligible for benefits for those weeks in which he withheld information regarding his employment with and separation from Paval. Section 401(c) of the Law provides that compensation shall be payable to any employee who is or becomes unemployed, and who makes a valid application for benefits with respect to the benefit year for which compensation is claimed and has made a claim for compensation in the proper manner and on the proper form. Claimant had made application for benefits on the proper form but failed to disclose his employment with or voluntary separation from Paval.

The Board found that by withholding this information with respect to his employment with Paval, claimant did not make a claim for compensation in the proper manner as required by Section 401(c) and was therefore ineligible for benefits for the weeks in which claimant withheld this information from the OES.

A claimant seeking unemployment compensation benefits is required to divulge to the OES all pertinent information regarding the claimant's employment status. This information is required so that the OES may make an intelligent and informed determination as to the claimant's eligibility for benefits and computation of a weekly benefit rate and partial benefit credit. This requirement which is imposed upon claimants recognizes the Commonwealth's interest in unemployment compensation and assists in fulfilling the Commonwealth's duty to protect the unemployment compensation fund against dissipation by those not entitled to benefits under the law. *Cf. Stanley Mfg. Co., Division J. Schoeneman, Inc. v. Unemployment Compensation Board of Review,* 208 Pa. Superior Ct. 291, 222 A.2d 468 (1966).

The fact claimant quit his part-time position with Paval after receiving notice of his lay-off at Pittman was important and relevant to the OES determination as to claimant's eligibility for benefits and was required to be divulged to the OES. The Board specifically found that the benefits claimant received for the weeks ending March 7, 1981 through September 26, 1981 were approved by the OES because claimant withheld this information regarding his job at Paval. By claimant's own admission, the omission of his employment at Paval and of his quitting that job was deliberate, although claimant argues the omission was due to a misunderstanding of the rules. The referee and the Board were unconvinced by claimant's assertion of

mistake and noted claimant's written resignation to Paval of February 28, 1981 in which claimant told Paval he was quitting because "working here would mess up my unemployment." As questions of credibility and determining the weight of evidence are properly for the fact finder, we are bound by the Board's determination. *See Roach v. Unemployment Compensation Board of Review*, 31 Pa. Commonwealth Ct. 424, 376 A.2d 314 (1977). Therefore, we agree with the Board that claimant was ineligible for benefits under Section 401(c) of the Law for the compensable weeks ending March 7, 1981 through September 26, 1981.

Claimant's second issue, regarding the Board's failure to grant claimant's request to take further evidence on the issue of which employer was claimant's "last employer"[9] may be dealt with summarily. We have already determined that claimant was required to inform the OES of his employment with Paval and the nature of his separation from Paval as well as his lay-off from Pittman. The question of whether Pittman or Paval was claimant's "last employer" is irrelevant to our inquiry. Therefore, the Board did not err by failing to take additional evidence as to the relative work weeks of Pittman and Paval as requested by claimant.

The final issue for our determination is whether there was the requisite finding of "fault" on the part of the claimant so as to subject claimant to a fault overpayment recoupment under Section 804(a). Claim-

---

[9] Claimant argues Pittman's work week runs from Monday to the following Sunday. Since he quit his job at Paval on Saturday, February 28, 1981, and his final work week at Pittman ended Sunday, March 1, 1981, as claimant's argument goes, his last employer would be Pittman, even though he worked at Paval after he last worked at Pittman. Therefore, according to claimant's theory, he was not required to divulge his separation from Paval and was eligible for benefits for the weeks in question.

ant contends there are insufficient findings by the referee and Board so as to impose liability under Section 804(a) for a fault overpayment recoupment. We disagree.

The word "fault" within the meaning of Section 804(a) connotes an act to which blame, censure, impropriety, shortcoming or culpability attaches. *Summers v. Unemployment Compensation Board of Review*, 60 Pa. Commonwealth Ct. 146, 430 A.2d 1046 (1981). To find "fault" under Section 804(a), there must be some finding by the referee or the Board concerning the claimant's state of mind. *Maiorana v. Unemployment Compensation Board of Review*, 70 Pa. Commonwealth Ct. 614, 453 A.2d 747 (1982).

In the instant case, there are several findings of the referee which have a bearing on claimant's application for benefits. Those findings are numbers five, seven, nine, ten, and eleven, which state:

5. Claimant never discussed any of his alleged problems regarding the plant manager with his employer. Claimant submitted a written resignation to the employer stating he was quitting because "working here would mess up my unemployment."

. . .

7. Claimant filed an application for benefits with an effective date of March 1, 1981, established a weekly benefit rate of $143, dependent's allowance of $8 and a partial benefit credit of $58.

. . .

9. The checks were issued because claimant did not report his work with Paval Associates, Inc. or the fact that he had quit that job after his separation from Pittman Division.

10. The local office became aware of the work and separation therefrom after claimant filed a new claim effective May 30, 1982 and on June 15, 1982, indicating he had eight credit weeks from Paval Associates.

11. The claimant received and read the informational pamphlet which is provided to claimant by the Office of Employment Security to advise them of their rights and responsibilities under the Law.

We feel the above findings, specifically numbers five, ten and eleven, are indicative of the claimant's state of mind and support an inference of culpability. Claimant was aware his employment with Paval would affect his unemployment as shown by his written resignation to Paval in February 1981 and his claim to eight credit weeks from Paval in his 1982 application for benefits. Claimant acknowledged that he had received and read the informational pamphlet provided by the OES and that his 1981 application was not his first claim for unemployment benefits. The findings as found by the referee and the Board amply support the finding of culpability necessary to impose liability upon claimant under Section 804(a) for a fault overpayment recoupment.

We will therefore affirm the Board's order.

### Amended Order

And Now, the 14th day of August, 1984, the order of the Unemployment Compensation Board of Review at No. B-213248, dated January 4, 1983, denying benefits to Dale E. Amspacher for the compensable weeks ending March 7, 1981 through September 26, 1981 and finding Dale E. Amspacher liable for a fault overpayment recoupment in the amount of $4,530.00 under Section 804(a) of the Unemployment Compensation Law is hereby affirmed.

456

DISSENTING OPINION BY JUDGE DOYLE:

I respectfully dissent. I do not believe the record in this case is sufficiently complete to support the Board's determination. Both the finding of a violation of Section 401(c)[1] and the finding of a fault overpayment depend on the reasonableness of claimant's failure to indicate Paval as his last employer, and I do not believe we have sufficient facts to review the Board's conclusion on that issue.

Section 401(c) provides only that a claimant must make "a valid application . . . in the proper manner and on the form prescribed by the department. . . ." I do not believe the mere fact that an error was made in the application is sufficient to find a violation of Section 401(c) when a claimant raises the issue of mistake or misapprehension of the unemployment compensation rules. Claimant testified that he did not believe his part-time employment with Paval was material to his initial application. Whether that application was valid or in the proper manner consequently turns on the appropriateness of his belief in light of instructions on the prescribed form or in the informational pamphlets claimant admitted having read. Neither claimant's initial application form, a copy of the standard application form, nor the instructional pamphlets, to which both the majority and the Board attach significance, are in the record. All that appears is a computer printout of claimant's unemployment benefit history generated by the unemployment compensation authorities. Without knowing what instructions or lack of instructions may have contributed to claimant's omission, we cannot determine on review whether claimant's failure to provide the correct in-

---

[1] Section 401(c) of the Unemployment Compensation Law, Act of December 5, 1936, *Second Ex Sess.*, P.L. (1937) 2897, *as amended,* 43 P.S. §801(c).

formation constituted, as a matter of law, an improper or invalid application. Much less can we assign culpability or bad faith to his failure in the initial application for benefits without some evidence of record which demonstrates that his allegations of mistake are unjustified. And, of course, we cannot take judicial notice of either the forms or pamphlets as they are neither laws nor regulations promulgated under the law.

The majority and the Board, however, point to claimant's letter of resignation from Paval which indicates his apprehension that continuation in the part-time job would "mess up" his unemployment.[2] I do not believe this short assertion is sufficient to demonstrate claimant's facility with the technicalities of unemployment compensation law or to suggest any intention to file a falsified application.[3] To be sure it indicates some awareness that the part-time job was relevant, but in light of claimant's other testimony I believe the letter shows only his confusion over what the precise implications of the part-time employment were.[4] What the record lacks is evidence showing that claimant had no reason to be so confused.

---

[2] This part of the resignation letter (which is actually an employer's form filled out by the claimant) is crossed out in orange marking pen and the following appears, also in orange:

*U C Dept.*

Please note reason for not working.
The record does not explain the defacement.

[3] Claimant's subsequent frank disclosure of his employment with Paval is also inconsistent with any design to wrongfully manipulate the system to his advantage. Were he as knowledgeable of the workings of the unemployment compensation system as the majority implies, such a fatal admission would surely never have been so casually made.

[4] In fact, the record demonstrates that even had claimant *continued* his part-time employment with Paval, he would have suffered a reduction of only *forty cents* in his unemployment benefits.

458

In short, I believe that under the circumstances presented here, review by this Court requires a record which indicates what information claimant believed he was to provide, what instructions he responded to in providing that information, and what instructions he should have responded to in filing the initial application. I would remand.